UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

DON KARL JURAVIN,

      Debtor.

_____/

DON KARL JURAVIN,
Case No. 6:18-bk-06821-KSJ

      Applicable Debtor.

_____/

DENNIS D. KENNEDY,
AS CHAPTER 7 TRUSTEE OF THE
ESTATE OF DON KARL JURAVIN,

      Plaintiff,

v.

NATURAL VITAMINS LABORATORY CORP.,
KARAN ARORA, UNITED MEDICAL GROUP
INTERNATIONAL, INC., ANNA JURAVIN,
PSR DEVELOPERS, LLLP,

      Defendants.

_____/

Chapter 7

Case No. 6:18-bk-06821-KSJ

Case No. 6:20-bk-01801-KSJ

*Jointly Administered with*
Case No. 6:18-bk-06821-KSJ

Adv. Pro. No. _____

## COMPLAINT

Dennis D. Kennedy, as Chapter 7 Trustee for the Estate of Don Karl Juravin

("**Trustee**")[1], through counsel, hereby files this Complaint to Avoid and Recover Fraudulent

Transfers, Preferential Transfers, and Post-Petition Transfers, and for Turnover against Natural

---

[1] Due to the large number of defined terms within this Complaint, a list of all of the defined terms is attached as **Appendix 1** hereto.

Vitamins Laboratory Corp. ("**NVLC**"), Karan Arora, United Medical Group International, Inc. ("**UMGI**"), Anna Juravin, and PSR Developers, LLLP ("**PSR Developers**") pursuant to 11 U.S.C. §§ 542, 544, 547, 548, 549, and 550 and Chapter 726, *Florida Statutes* ("**FUFTA**"), and alleges:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1334 and 157.

2.    Venue is proper in this district under 28 U.S.C. § 1409.

3.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (E), (F) and (H).

## BACKGROUND

### *The Debtor's Business Affairs.*

4.    From 2009 through at least 2016, Debtor was an owner, officer, or representative of numerous entities, including without limitation, Roca Labs, Inc. ("**Roca Labs**"); Roca Labs Nutraceutical USA, Inc. ("**RLN**"); Must Cure Obesity, Co. ("**MCO**"); Juravin, Incorporated ("**JINC**"); and Zero Calorie Labs, Inc. ("**ZCL**") (collectively, the "**Juravin Entities**").

3.    Debtor exercised authority and control over the Juravin Entities' advertising and sale of dietary supplements and food products, including the Roca Labs "Formula" and "Anti-Cravings" powder, to consumers throughout the United States, as a safe and cost-effective alternative to gastric bypass surgery to combat obesity and achieve substantial weight-loss.

4.    Individual consumers paid the Debtor and/or the Juravin Entities hundreds of dollars for these worthless weight loss products which were nothing more than a fake medical regime purportedly designed to help consumers lose weight.

5.      Debtor and the Juravin Entities intended to deceive consumers by marketing the weight-loss products so that the consumers would buy the weight-loss products and enrich the Debtor.

6.      At all times material hereto, acting alone or in concert with others, Debtor formulated, directed, controlled, had the authority to control, or participated in the false advertising and other deceptive business practices perpetrated by the Juravin Entities.

7.      Debtor and the Juravin Entities operated as a common enterprise while engaging in deceptive business practices and fraudulent activities.

8.      Each of the Juravin Entities was created to further the deceptive and fraudulent weight-loss scam, or to conceal funds of the scam or of other scams created or perpetrated by the Debtor.

9.      Each of the Juravin Entities was created, formed, and operated for an improper purpose.

10.     At all times material hereto, Debtor had authority and control over the Juravin Entities.

11.     At all times material hereto, the Juravin Entities were mere instrumentalities of the Debtor.

12.     At all times material hereto, Debtor used the bank accounts of the Juravin Entities as his own personal piggy bank.

13.     At all times material hereto, Debtor maintained control of the accounts of the Juravin Entities.

14.     At all times material hereto, Debtor transferred substantial funds between and among the bank accounts of the Debtor and the Juravin Entities.

15.    For example[2], in the four-year period prior to the Juravin Petition Date the Debtor transferred the following:

    a.    at least $2,202,915.58 from his personal accounts to accounts held by MCO;

    b.    at least $2,833,206.28 from MCO's accounts to his personal accounts;

    c.    at least $1,000,077.00 from MCO's accounts to JINC's accounts;

    d.    at least $2,005,557.00 from his personal accounts to JINC's accounts;

    e.    at least $587,392.15 from JINC accounts to the Debtor's personal accounts;

    f.    at least $476,710.05 from the JINC accounts to MCO's accounts;

    g.    at least $964,400.00 from his personal accounts to accounts held by RLN.

16.    From November 1, 2012 to January 29, 2016, the Debtor transferred the at least $1,834,731.43 from RLN's accounts to his personal accounts, and at least $1,160,100.00 from RLN's accounts to JINC's accounts.

17.    Due to the Debtor's intermingled accounts, and the extent of the transfers between and among such accounts, a transfer from an account associated with a Juravin Entity constitutes a transfer of property of the Debtor.

## PROCEDURAL HISTORY

### *The FTC Case.*

18.    On September 24, 2014, the Federal Trade Commission ("**FTC**") filed a Complaint for Permanent Injunction and Other Equitable Relief, initiating case number 8:15-cv-02231, in the United States District Court for the Middle District of Florida ("**FTC Case**"),

---

[2] The specific transfers referenced in this paragraph and the following paragraph are meant as examples only. The Debtor failed to adequately respond to discovery in this case and the Trustee obtained a "break order" (Doc. No. 502) to gain access to the Debtor's electronic records. The Trustee has only recently obtained access to those records, which will likely disclose more transfers of this type.

against Roca Labs; RLN; Don Juravin; and George C. Whiting, alleging claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act.

19.     On February 19, 2016, the FTC filed an Amended Complaint to name additional defendants: MCO; JINC; and ZCL.

20.     The FTC alleged that Debtor and his codefendants falsely or deceptively advertised their weight-loss products, causing over $25 million in consumer injury.

21.     The FTC also alleged Debtor and his codefendants unfairly used non-disparagement clauses in their sale terms for these products as part of their scheme, purporting to prohibit consumers from making truthful or non-defamatory negative comments or reviews about Debtor and his codefendants, their products, or their employees.

22.     The District Court entered a temporary restraining order against Debtor and his codefendants to halt their fraudulent scheme, and later entered a preliminary injunction and asset freeze order.

23.     In April 2018, the FTC moved for summary judgment against Debtor and his codefendants on all counts, including its claim for monetary relief.

24.     Debtor, who was represented by counsel throughout the FTC Case, opposed the FTC's motion and moved for partial summary judgment solely on the unfair non-disparagement clause claim.

25.     In September 2018, the District Court issued an order granting summary judgment to FTC on all counts as to liability, but requiring further briefing as to the amount of monetary relief.

26.     The District Court denied Debtor's motion for partial summary judgment.

27.    In the Summary Judgment Order, the District Court found that Debtor and his codefendants were liable for violating Sections 5 and 12 of the FTC Act because they:

    a.   made false and unsubstantiated weight-loss claims about their products;

    b.   falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

    c.   deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

    d.   misrepresented the nature of that purportedly independent site;

    e.   misrepresented that they would keep their customers' private health information confidential;

    f.   misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products;

    g.   unfairly suppressed negative information about Debtor and his codefendants and their falsely advertised products, to the detriment of subsequent purchasers, by making threats to sue, and filing of lawsuits against, dissatisfied consumers for violating non-disparagement clauses in their online sales contracts.

28.    Further, the Honorable Mary Scriven of the United States District Court for the Middle District of Florida found Debtor jointly and severally liable with the Juravin Entities for their deceptive conduct because they operated as a common enterprise under his ownership and control, with common officers, business functions, employees, and office locations, he knew

about the false and deceptive representations, he participated in the deceptive acts, and he had authority to control them.

29.    On November 6, 2018, the District Court issued an order for $25,246,000.00 in monetary relief against Debtor and his codefendants.

30.    On January 4, 2019, the District Court entered a permanent injunction and a Final Judgment against Debtor and the Juravin Entities in the amount of $25,246,000.00.

31.    Following a trial conducted by this Court, the Court entered a Memorandum Opinion on October 27, 2020 finding the Debtor intended to deceive his customers and finding the FTC judgment non-dischargeable.

### The Juravin Bankruptcy Case.

32.    On October 31, 2018 (the "**Juravin Petition Date**"), the Debtor, Don K. Juravin, filed this Chapter 7 bankruptcy case (the "**Juravin Bankruptcy Case**").

33.    The Trustee was duly appointed as the Chapter 7 Trustee.

34.    On September 16, 2019, upon the Debtor's motion, the Juravin Bankruptcy Case was converted to Chapter 11 from Chapter 7.

35.    On March 16, 2020, after sustaining all objections to confirmation of the Debtor's proposed Chapter 11 plan and finding that the Debtor "is unable to articulate any reasonable way to succeed in [the] Chapter 11 case", the Court re-converted the case back to Chapter 7.

36.    On October 5, 2020, the United States Trustee conducted a chapter 7 trustee election.

37.    Trustee was duly elected as Chapter 7 Trustee.

*The MCO Bankruptcy Case.*

38.     On January 31, 2020, Must Cure Obesity, Co. filed a voluntary Chapter 11 bankruptcy case, case number 6:20-bk-1801 (the "**MCO Bankruptcy Case**").

39.     On May 29, 2020, the MCO Bankruptcy Case converted from Chapter 11 to Chapter 7.

40.     On May 29, 2020, Trustee was appointed as the Chapter 7 Trustee in the MCO Bankruptcy Case.

41.     On November 19, 2020, the Court ordered the Juravin Bankruptcy Case and the MCO Bankruptcy Case to be jointly administered.

## **FACTUAL ALLEGATIONS**

### **The Parties**

#### *The Trustee*

42.     Plaintiff is the Chapter 7 Trustee for the bankruptcy estate of Don K. Juravin.

43.     Dennis D. Kennedy also serves as the chapter 7 trustee for the estate of MCO in the MCO Bankruptcy Case.

#### *NVLC*

44.     NVLC is a Florida corporation doing business throughout the state.

45.     NVLC's principal address is 12815 NW 45 Ave, Opalocka, Florida, 33054.

#### *Karan Arora*

46.     Karan Arora is the owner, registered agent, and president of NVLC.

47.     Karan Arora resides at 5337 SW 183rd Ave, Miramar, Florida 33029.

48.     Karan Arora and/or NVLC have a close relationship with the Debtor and the Juravin Entities, as further described herein.

49.     Karan Arora and NVLC are insiders of the Debtor and the Juravin Entities.

*Anna Juravin*

50.     Anna Juravin is the Debtor's spouse.

51.     Anna Juravin resides at 15118 Pendio Drive, Montverde, Florida 32756.

52.     Anna Juravin is an individual who serves as the registered agent, president, and, according to some of UMGI's own documents, its "sole officer and director".

53.     Anna Juravin is an insider of the Debtor and the Juravin Entities.

*UMGI*

54.     UMGI is a Florida corporation doing business throughout the state.

55.     UMGI's principal address is 15118 Pendio Drive, Montverde, Florida 32756, which is also the Debtor's and Anna Juravin's residence.

56.     Various records of UMGI reflect that Anna Juravin is its sole officer and director.

57.     The Florida Division of Corporations and some of UMGI's records reflect that its board of directors consists of Anna Juravin, Anton Botha, and Karan Arora.

58.     Despite this, Anton Botha testified that he had not consented to being a director of UMGI, was unaware that he was listed as a director of UMGI, and in fact, had never heard the name UMGI.

59.     Karan Arora testified that he had not attended a board meeting at UMGI.

60.     He testified only that he and Anna Juravin had Zoom calls.

61.     He testified that he had not participated in any board meetings with another board member.

62.     Karan Arora testified that he did not know the other board member of UMGI.

63.    UMGI is an insider as it is operated and controlled by the Debtor and his wife, Anna Juravin.

*PSR Developers LLLP*

64.    PSR Developers is a Florida limited liability limited partnership operating and doing business in Lake County, Florida.

65.    PSR Developers' principal address is 15317 Pendio Drive, Montverde, Florida, 34756.

66.    PSR Developers is a real estate developer that develops residential housing in Florida, including in the Bella Collina community in Lake County, Florida.

67.    PSR Developers developed the real property located at 15118 Pendio Drive, Montverde, Florida 34756 ("**Property**"), which was subsequently purchased by the Debtor and his wife, Anna Juravin.

68.    PSR Developers financed the purchase of the Property for the Debtor and his wife.

**UMGI as Alter Ego or Mere Continuation of the Debtor**

69.    UMGI's own "business model" is extremely similar to the business model of the Juravin Entities.

70.    UMGI is designed to provide "weight analyzer" and "weight loss maximizer" online forms and mobile applications that will allegedly coach its users to lead a healthier lifestyle.

71.    UMGI further "creates" and provides its own research to demonstrate to customers that its weight loss program is effective.

72.    Much like with the Juravin Entities, Debtor exercises substantial authority and control over UMGI's business practices and financial affairs, and over Anna Juravin, his wife, who is purportedly the face of UMGI.

73.    The "business" of UMGI is operated out of the Debtor's home.

74.    According to the Debtor, he is responsible for developing the business plan for UMGI.

75.    The Debtor, either personally and/or through the Juravin Entities, purportedly performs work and provides services to UMGI.

76.    The Debtor, either personally and/or through the Juravin Entities, receives a substantial salary, benefits, and other compensation, and often obtains "loans" from UMGI.

77.    At all material times, acting alone or in concert with others, including Anna Juravin, Debtor formulated, directed, controlled, had the authority to control, or participated in the business practices of UMGI.

78.    UMGI is a mere continuation of the Debtor and/or the Juravin Entities.

79.    UMGI was created, formed, and is operated for an improper purpose.

80.    UMGI was created, formed, and is operated either to further its own deceptive and fraudulent weight-loss scam, or to further the scam perpetrated by the Juravin Entities, or to conceal funds of the scam or of other scams created or perpetrated by the Debtor, Anna Juravin, and/or the Juravin Entities.

81.    Debtor, the Juravin Entities, Anna Juravin, and UMGI operate as a common enterprise while engaging in deceptive business practices and improper activities.

82.    At all times material hereto, UMGI was a mere instrumentality of the Debtor.

### The Transfers to NVLC and/or Karan Arora

*Background*

83.    Debtor and the Juravin Entities have been "doing business" with NVLC since approximately 2013 or 2014.

84.    NVLC also "does business" with UMGI.

85.    NVLC is a manufacturer of supplements.

86.    At all times material hereto, Debtor would order supplements to use in his bogus weight-loss products from NVLC.

87.    NVLC would purportedly manufacture and supply those supplements to Debtor and the Juravin Entities.

88.    Debtor, personally and through the Juravin Entities, transferred monies to NVLC both pre-and post-petition.

89.    NVLC also transferred monies to the Debtor and the Juravin Entities both pre- and post-petition.

*Transfers to NVLC and Karan Arora*

90.    The books and records of the Debtor and Karan Arora and NVLC reflect substantial transfers from the Debtor to NVLC and/or Karan Arora.

91.    Debtor, personally and through the Juravin Entities, routinely overpaid NVLC and/or Karan Arora for the supplements allegedly sold by NVLC.

92.    On or about June 2021, Karan Arora provided the Trustee with a spreadsheet detailing the transactions between NVLC and Debtor (the "**NVLC Spreadsheet**"). A true and correct copy of the NVLC Spreadsheet is attached hereto as **Exhibit A.**

93.    The NVLC Spreadsheet reflects that between December 16, 2013 through November 7, 2018, the Debtor made "payments and deposits" to NVLC totaling no less than $2,764,217.50.[3]

94.    The Debtor's books and records reflect an additional transfer to NVLC on November 14, 2017 in the amount of $560,000.00.

95.    Accordingly, in total, the Debtor transferred "payments and deposits" in the amount of $3,324,217.50, of which at least $2,900,746.50 was transferred during the four-year period prior to the Juravin Petition Date (the "**Deposits**").

96.    At all times material hereto, the Deposits, though held by NVLC, remained under the Debtor's control and direction.

97.    The Debtor eventually directed NVLC to pay the Deposits, either in whole or in part, to the Debtor or for the Debtor's benefit.

98.    NVLC in fact paid the Deposits as directed by the Debtor.

99.    From September 12, 2018 through October 1, 2020, NVLC paid no less than $1,572,250.00 to the Debtor or for his benefit (the "**Return Payments**").

100.    NVLC paid the Return Payments to Debtor or for the Debtor's benefit by transferring the funds to the Debtor, MCO, UMGI, or to another unknown person or entity, at the Debtor's direction.

101.    NVLC paid the Return Payments, including but not limited to the UMGI Transfers (as defined below), post-petition with knowledge of the pending Juravin Bankruptcy Case.

---

[3] Though all payments in the "Payments and Deposits from Don Juravin" columns reflect that they were made by MCO, Debtor did not own MCO until approximately December 22, 2014.

102.    NVLC and/or Karan Arora may also continue to hold or transfer money of the Debtor to the Debtor or for his benefit.

*The UMGI Transfers*

103.    While the NVLC Spreadsheet reflects that the Return Payments were all transferred to MCO, in reality, the transfers from July 3, 2019 to October 1, 2020 were all transfers of funds to UMGI.

104.    Specifically, NVLC made the following transfers to UMGI:

     a.    $350,050.00 on or about July 8, 2019;

     b.    $250,000.00 on or about October 31, 2019;

     c.    $100,000.00 on or about June 4, 2020;

     d.    $250,000.00 on or about September 25, 2020;

(collectively, the "**UMGI Transfers**").

105.    NVLC and/or Karan Arora may have transferred additional monies in an unknown amount to UMGI.

106.    Thus, the UMGI Transfers total no less than $950,000.00.

107.    The UMGI Transfers were not intended by Karan Arora or NVLC as equity infusions or transfers to acquire an ownership interest in UMGI.

108.    Rather, the UMGI Transfers were made to the Debtor (through UMGI) and/or for the benefit of the Debtor.

109.    Specifically, as reflected by Karan Arora's testimony under oath, NVLC and/or Karan Arora made the UMGI Transfers in order to return the Debtor's funds to the Debtor.

110.    Debtor and his wife, Anna Juravin, benefitted from the UMGI Transfers as they had control over, and access to, the funds held by UMGI.

111.    Anna Juravin routinely directs funds from UMGI to herself and to the Debtor, including without limitation, the Anna Juravin Subsequent Transfer, as described below.

*The Bogus Invoices*

112.    The NVLC Spreadsheet purports to reflect that a total of $1,685,644.76 was billed to and paid by the Debtor.

113.    Prior to the filing of this adversary proceeding, the Trustee served Karan Arora with a subpoena duces tecum requiring him to provide all supporting documentation for the alleged sales of NVLC goods and services to the Debtor and/or the Juravin Entities.

114.    More specifically, the Trustee requested Karan Arora and NVLC produce invoices, bills of sale, ledgers, statements of account, agreements between Debtor and the Juravin Entities, books and records of NVLC, including financial documents that would support the alleged sales of goods and services by NVLC, among other things.

115.    Karan Arora and NVLC supplied only invoices, the NVLC Spreadsheet, and a few emails.

116.    Karan Arora and NVLC did not produce any other documentation reflecting the placement of orders, manufacturing of goods, the financial transactions or receipts for those transactions, the shipping of the supplements, or the like.

117.    Upon information and belief, some or all of these invoices are bogus invoices designed to give the appearance of legitimate business transactions between NVLC and the Debtor.

*The Bogus Proofs of Claims*

118.    As of the Juravin Petition Date, NVLC was purportedly a creditor of the Debtor and the Juravin Entities.

119.   On May 29, 2019, Proof of Claim Number 7, in the amount of $200,000.00 for "goods sold" was filed on behalf of Karan Arora.

120.   On January 3, 2020, Proof of Claim Number 15 was filed on behalf of Karan Arora, in the amount of $500,001.00 based on a purported promissory note, in which the Debtor and MCO promise to pay Karan Arora the principal balance of $500,001.00 (the "**$501k Promissory Note**").

121.   On July 21, 2020, Proof of Claim Number 15 was amended ("**Proof of Claim 15-2**", and together with Proof of Claim Number 15, and Proof of Claim Number 7, the "**Bogus Proofs of Claims**").

122.   Proof of Claim 15-2 was still in the amount of $500,001.00, but purported to secured by "All assets of Don K. Juravin and Must Cure Obesity, Co., including but not limited to general intangibles, accounts (including accounts receivable), inventory, equipment, fixtures, chattel paper, documents, and instruments."

123.   Proof of Claim 15-2 was purportedly based on the following documents:

   a.   The $501k Promissory Note;

   b.   a purported Promissory Note and Security Agreement dated September 10, 2018 in which the Debtor and MCO promised to pay NVLC "and/or" Karan Arora a total of $800,000.00;

   c.   A UCC-1 Financing Statement asserting a lien on "Any and all assets of Must Cure Obesity Co."

124.   Debtor orchestrated the preparation and filing of the Bogus Proofs of Claims.

125.   The Bogus Proofs of Claims and the supporting documentation was prepared by the Debtor, or the Debtor's attorneys.

126.   Specifically, Debtor's counsel, April Goodwin, prepared the UCC-1 Financing Statement attached to Proof of Claim 15-2.

127.   Through the Bogus Proofs of Claims, particularly Proof of Claim 15-2, the Debtor sought to recoup funds for himself or for his benefit from the Juravin Bankruptcy Estate.

128.   Through the Bogus Proofs of Claims, particularly Proof of Claim 15-2, the Debtor sought to orchestrate a foreclosure of Karan Arora and/or NVLC's alleged lien on the Debtor's and MCO's assets.

129.   During his 2004 examination on June 23, 2021, Karan Arora admitted under oath that neither he nor NVLC had any legitimate claims against the Debtor or the Juravin Entities.

130.   On June 24, 2021, a Notice of Withdrawal of Proof of Claim #5 was filed by Karan Arora and NVLC.

131.   On June 24, 2021, a Notice of Withdrawal of Proof of Claim #7, Proof of Claim #15 and Amended Proof of Claim 15-2 was filed by Karan Arora and NVLC.

132.   Karan Arora and NVLC no longer have any remaining claims in the Juravin Bankruptcy Case.

*Debtor's Retention of Counsel on behalf of NVLC and Karan Arora*

133.   Debtor further orchestrated the retention of counsel on behalf of NVLC and Karan Arora.

134.   Debtor contacted numerous attorneys seeking to secure legal counsel for NVLC and Karan Arora, because the Debtor was "helping [Karan Arora] throughout the whole thing."

135.   Karan Arora was aware that the Debtor orchestrated the preparation and filing of the Bogus Proofs of Claims and the retention of counsel on behalf of Karan Arora and NVLC.

*The Anna Juravin Subsequent Transfer from UMGI to Anna Juravin*

136.    As set forth above, NVLC made the UMGI Transfers to UMGI.

137.    On July 18, 2019, shortly after UMGI's receipt of the first UMGI Transfer on or about July 8, 2019 in the amount of $350,050.00, UMGI then transferred approximately $160,000.00 to Anna Juravin personally ("**Anna Juravin Subsequent Transfer**").

138.    The Anna Juravin Subsequent Transfer was made post-petition with pre-petition funds belonging to the Debtor.

139.    Anna Juravin then used the Anna Juravin Subsequent Transfer to pay down the mortgage debt on the Debtor's residence at 15118 Pendio Drive, Monteverde, Florida 34756.

140.    On August 29, 2019, Anna Juravin wired $150,000.00 to PSR Developers.

141.    At the time of the transfers of the Deposit, the UMGI Transfers, the Anna Juravin Subsequent Transfer, and the PSR Transfers, the funds transferred were property of the estate, whether in the hands of NVLC and/or Karan Arora, UMGI, Anna Juravin, or PSR Developers.

## COUNT I: ACTUAL FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against NVLC and Karan Arora)

142.    The Trustee realleges paragraphs 1 through 141 as if fully set forth herein.

143.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108.

144.    Prior to the Juravin Petition Date, Debtor transferred the Deposits totaling at least $3,324,217.50 to NVLC and Karan Arora, of which at least $2,900,746.50 were transferred during the four-year period prior to the Juravin Petition Date.

145.    The transfers of the Deposits were made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

146.   At the time of the transfers of the Deposits, Debtor was insolvent or became insolvent shortly thereafter.

147.   At the time of the transfers of the Deposits, Debtor was insolvent in that his liabilities exceeded his assets.

148.   The transfers of the Deposits are avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

149.   Under 11 U.S.C. § 550(a), the Trustee may recover the transfers of the Deposits for the benefit of the estate, to the extent that the transfers of the Deposits are avoided under 11 U.S.C. §§ 544 and 548 and FUFTA.

150.   There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502 who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against NVLC and/or Karan Arora, jointly and severally, as follows: (i) finding that the transfers of the Deposits in the amount of at least $2,900,746.50 to, or for the benefit of, NVLC and/or Karan Arora were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the transfers of the Deposits in the amount of at least $2,900,746.50 to, or for the benefit of, NVLC and/or Karan Arora and entering a judgment in favor of the Trustee for the value of those transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the transfers and costs of the suit; (iii) an attachment or other provisional remedy against the Deposits in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

### COUNT II: CONSTRUCTIVE FRAUD
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against NVLC and/or Karan Arora)

151.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

152.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and §§ 726.105(1)(b), 726.106(1), and 726.108.

153.    Prior to the Juravin Petition Date, Debtor transferred the Deposits totaling at least $3,324,217.50 to NVLC and Karan Arora, of which at least $2,900,746.50 were transferred during the four-year period prior to the Juravin Petition Date.

154.    Debtor did not receive reasonably equivalent value in exchange for the transfers of the Deposits.

155.    At the time of the transfers of the Deposits, Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay them as they became due.

156.    At the time of the transfers of the Deposits, Debtor was insolvent or became insolvent as a result of the transfers, as reflected by the debt owed to the Internal Revenue Service and Federal Trade Commission, among others.

157.    At the time of the transfers of the Deposits, Debtor's liabilities exceeded his assets.

158.    The transfers are avoidable under §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B).

159.    There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

160.    Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the transfers for the benefit of the estate, insofar as the transfers are avoided under 11 U.S.C. §§ 544, 548, and FUFTA.

WHEREFORE, the Trustee demands judgment against NVLC and/or Karan Arora, jointly and severally, as follows: (i) that the transfers of the Deposits, in amount of at least $2,900,746.50 to, or for the benefit of, NVLC and/or Karan Arora were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the transfers of the Deposits, in an amount of at least $2,900,746.50, and entering a judgment in favor of the Trustee for the value of the transfers, plus pre-judgment interest from the date of the transfers and costs of the suit; (iii) an attachment or other provisional remedy against the Deposits in accordance with applicable law; and (iv) for any other and further relief that this Court deems just and proper.

### COUNT III: AVOID AND RECOVER POST PETITION TRANSFERS
**(Against NVLC and/or Karan Arora)**

161.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

162.    This is an adversary proceeding to avoid and recover post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550.

163.    Prior to the Juravin Petition Date, Debtor transferred the Deposits totaling at least $3,324,217.50 to NVLC and Karan Arora, of which at least $220,000.00 was transferred by the Debtor, either personally or through the Juravin Entities, to NVLC and/or Karan Arora post-petition (the "**Post-Petition NVLC Transfers**").

164.    The Post-Petition NVLC Transfers were not authorized by the Bankruptcy Code or by this Court.

165.    The Post-Petition NVLC Transfers involved property of the estate.

166.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is permitted to the extent that the respective post-petition transfers are avoided under 11 U.S.C. § 549.

WHEREFORE, the Trustee demands judgment against NVLC and/or Karan Arora, jointly and severally, as follows: (i) finding the Post-Petition NVLC Transfers in the amount of at least $220,000.00 were unauthorized and avoidable under 11 U.S.C. §§ 549 and 550, and FUFTA; (ii) avoiding Post-Petition NVLC Transfers in the amount of at least $220,000.00 and entering a judgment in favor of the Trustee for the value of the Post-Petition NVLC Transfers, plus pre-judgment interest from the date of the post-petition transfers and costs of the suit or recovery of the post-petition transfers; and (iii) for any other and further relief that this Court deems just and proper.

### COUNT IV: TURNOVER OF PROPERTY
### (Against NVLC and/or Karan Arora)

167.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

168.    This is an adversary proceeding to compel turnover of property pursuant to 11 U.S.C. § 542(a).

169.    Prior to the Juravin Petition Date, Debtor transferred the Deposits totaling at least $3,324,217.50 to NVLC and Karan Arora.

170.    The Deposits are property of the Debtor's Bankruptcy Estate.

171.    The Deposits are subject to administration by the Trustee, including the payment of creditors.

172.    NVLC and/or Karan Arora have an obligation to preserve the status quo as of the Petition Date and to turn over the Deposits to the Trustee.

WHEREFORE, Plaintiff respectfully requests that the NVLC and/or Karan Arora, jointly and severally, be ordered to surrender possession of the Deposits in the amount of at least $3,324,217.50, or their value, to the Plaintiff, and for any such further relief that this Court deems just and proper.

## COUNT V: AVOIDANCE OF PREFERENTIAL TRANSFER
### (Against NVLC and/or Karan Arora)

173.    Trustee realleges paragraphs 1 through 141 as if fully set forth herein.

174.    This is a count to avoid and recover preferential transfers pursuant to §§ 547 and 550 brought based by the Trustee based on reasonable due diligence in the circumstances of the case and taking into account NVLC and/or Karan Arora's known or reasonably knowable affirmative defenses.

175.    This Count is pled in the alternative to Counts I-III herein in the event that there were actual and legitimate business transactions between NVLC and/or Karan Arora and the Debtor and the Juravin Entities.

176.    NVLC and/or Karan Arora are insiders of the Debtor and the Juravin Entities.

177.    On or within one (1) year before the Petition Date, that is, between October 31, 2017 and October 31, 2018 (the "**Preference Period**"), the Debtor made payments and transferred property, including by check, wire transfers, or otherwise to certain entities, including NVLC and/or Karan Arora.

178.    The transfers were to or for the benefit of NVLC and/or Karan Arora during the Preference Period in an amount not less than $1,050,000.00 (the "**Arora Preferential Transfers**").

179.   The Arora Preferential Transfers were to or for the benefit of a creditor because the Preferential Transfers either reduced or fully satisfied a debt then owed by Debtor to NVLC and/or Karan Arora.

180.   The Arora Preferential Transfers were for or on account of an antecedent debt owed by Debtor before the Arora Preferential Transfers were made.

181.   The Arora Preferential Transfers constituted a transfer of an interest of the property of Debtor.

182.   Debtor was insolvent at all times during the Preference Period.

183.   As a result of the Arora Preferential Transfers, NVLC and/or Karan Arora received more than they would have received if: (i) Debtor's case were under Chapter 7 of the Bankruptcy Code; (ii) the Arora Preferential Transfers had not been made; and (iii) the defendants received payment of their claims under the provisions of the Bankruptcy Code.

184.   The Arora Preferential Transfers are avoidable and should be avoided, pursuant to 11 U.S.C. § 547.

185.   Pursuant to 11 U.S.C. § 550, Trustee is entitled to avoid the full amount of the Arora Preferential Transfers, and recover, for the benefit of the estate, the amount of the Arora Preferential Transfers.

WHEREFORE, the Trustee demands a judgment against NVLC and/or Karan Arora, jointly and severally, as follows: (i) finding that the Arora Preferential Transfers, in the amount of at least $1,050,000.00, to NVLC and/or Karan Arora were avoidable preferential transfers under 11 U.S.C. §§ 547 and 550; (ii) avoiding the Arora Preferential Transfers, in the amount of at least $1,050,000.00, pursuant to 11 U.S.C. § 547; (iii) entering a judgment in favor of the Trustee for the value of the amount transferred pursuant to 11 U.S.C. § 550, plus pre-judgment

interest from the date of the Arora Preferential Transfers and costs of the suit or recovery of the property transferred; and (iv) for any such further relief that this Court deems just and proper.

## COUNT VI: AVOID AND RECOVER POST PETITION TRANSFERS
### (Against UMGI)

186.   Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

187.   This is an adversary proceeding to avoid and recover post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550.

188.   Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

189.   Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI post-petition.

190.   The transfers of the UMGI Transfers were not authorized by the Bankruptcy Code or by this Court.

191.   The transfers of the UMGI Transfers involved property of the estate, as the UMGI Transfers were a portion of the Deposits transferred by the Debtor to NVLC and/or Karan Arora pre-petition.

192.   Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is permitted to the extent that the respective post-petition transfers are avoided under 11 U.S.C. § 549.

WHEREFORE, the Trustee demands judgment against UMGI, as follows: (i) that the post-petition UMGI Transfers, in the amount of at least $950,000.00, to and for the benefit of Debtor, were unauthorized and avoidable under 11 U.S.C. §§ 549 and 550, and FUFTA; (ii) avoiding the post-petition UMGI Transfers, in the amount of at least $950,000.00, and entering a judgment in favor of the Trustee for the value of the post-petition UMGI Transfers, plus pre-

judgment interest from the date of the post-petition transfers and costs of the suit or recovery of the post-petition transfers; and (iii) for any other and further relief that this Court deems just and proper.

**COUNT VII: ACTUAL FRAUD**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**(Against UMGI as Subsequent Transferee)**

193.    The Trustee realleges paragraphs 1 through 141 as if fully set forth herein.

194.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108 against UMGI as subsequent transferee.

195.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

196.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI post-petition.

197.    The UMGI Transfers were made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

198.    At the time of the UMGI Transfers, Debtor was insolvent.

199.    Debtor was insolvent at the time of the UMGI Transfers in that his liabilities exceeded his assets.

200.    The UMGI Transfers are avoidable and should be avoided, pursuant to and under 11 U.S.C. §§ 548 and 550.

201.    Under 11 U.S.C. § 550(a), the Trustee may recover the UMGI Transfers for the benefit of the estate, to the extent that the UMGI Transfers are avoided under 11 U.S.C. §§ 548 and 550.

202.    UMGI is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the transfers were made, and as a result, the Trustee is entitled to recover these UMGI Transfers pursuant to §548(a)(1)(A) and 11 U.S.C. §550(a)(2).

203.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the estate is authorized to the extent that the respective transfers that occurred within four (4) years of the Petition Date are avoided under 11 U.S.C. §548(a)(1)(A).

WHEREFORE, the Trustee demands a judgment against UMGI as follows: (i) finding that the UMGI Transfers, in the amount of at least $950,000.00 were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the UMGI Transfers and entering a judgment in favor of the Trustee for the value of the transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the transfers and costs of the suit; and (iii) for any such further relief that this Court deems just and proper.

### COUNT VIII: CONSTRUCTIVE FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against UMGI as Subsequent Transferee)

204.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

205.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

206.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

207.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI post-petition.

208.    Debtor did not receive reasonably equivalent value in exchange for the transfers of the UMGI Transfers.

209.    At the time of the fraudulent transfers of the UMGI Transfers, Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay them as they became due.

210.    At the time of the UMGI Transfers, Debtor was insolvent or became insolvent as a result of the UMGI Transfers, as reflected by the debt owed to the Internal Revenue Service and Federal Trade Commission, among others.

211.    At the time of the UMGI Transfers, Debtor's liabilities exceeded his assets.

212.    The transfers are avoidable under Florida Statute §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

213.    There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

214.    Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the transfers for the benefit of the estate, insofar as the transfers are avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against UMGI as follows: (i) that the UMGI Transfers, in the amount of at least $950,000.00 were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the UMGI Transfers and entering a judgment in favor of the Trustee for the value of the transfers, plus pre-judgment interest from the date of the transfers and costs of the suit; and (iii) for any other and further relief that this Court deems just and proper.

**COUNT IX: TURNOVER OF PROPERTY UNDER 11 U.S.C. § 542(a)**
**(Against UMGI)**

215.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

216.    This is an adversary proceeding to compel turnover of property pursuant to 11 U.S.C. § 542(a).

217.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

218.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

219.    The transfers of the UMGI Transfers involved property of the estate, as the UMGI Transfers were a portion of the Deposits that were transferred by the Debtor pre-petition to NVLC and/or Karan Arora.

220.    The UMGI Transfers are subject to administration by the Trustee, including the payment of creditors.

221.    UMGI has an obligation to preserve the status quo as of the Petition Date and to turn over the UMGI Transfers to the Trustee.

WHEREFORE, Plaintiff respectfully requests that UMGI be ordered to surrender possession or the value of the UMGI Transfers, in the amount of at least $950,000.00 to the Plaintiff, and for any such further relief that this Court deems just and proper.

**COUNT X: AVOID AND RECOVER POST PETITION TRANSFERS**
**(Against Anna Juravin)**

222.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

223.    This is an adversary proceeding to avoid and recover post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550.

224.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

225.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

226.    UMGI then transferred the Anna Juravin Subsequent Transfer in the amount of at least $160,000.00 to Anna Juravin post-petition.

227.    The Anna Juravin Subsequent Transfer was not authorized by the Bankruptcy Code or by this Court.

228.    The Anna Juravin Subsequent Transfer involved property of the estate.

229.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is permitted to the extent that the respective post-petition transfers are avoided under 11 U.S.C. § 549.

WHEREFORE, the Trustee demands judgment against Anna Juravin as follows: (i) that the post-petition Anna Juravin Subsequent Transfer, in the amount of at least $160,000.00 was unauthorized and avoidable under 11 U.S.C. §§ 549 and 550, and FUFTA; (ii) avoiding the post-petition Anna Juravin Subsequent Transfer and entering a judgment in favor of the Trustee for the value of the post-petition transfers of the Anna Juravin Subsequent Transfer, plus pre-judgment interest from the date of the post-petition transfers and costs of the suit or recovery of the post-petition transfers; and (iii) for any other and further relief that this Court deems just and proper.

[CONTINUES ON NEXT PAGE]

## COUNT XI: TURNOVER OF PROPERTY UNDER 11 U.S.C. § 542(a)
### (Against Anna Juravin)

230.    Plaintiff realleges paragraph 1 through 141 as if fully set forth herein.

231.    This is an adversary proceeding to compel turnover of property pursuant to 11 U.S.C. § 542(a).

232.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

233.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

234.    UMGI then transferred the Anna Juravin Subsequent Transfer in the amount of at least $160,000.00 to Anna Juravin.

235.    The Anna Juravin Subsequent Transfer is property of the Debtor's Bankruptcy Estate.

236.    The Anna Juravin Subsequent Transfer is subject to administration by the Trustee, including the payment of creditors.

237.    Anna Juravin has an obligation to preserve the status quo as of the Petition Date and to turn over the Anna Juravin Subsequent Transfer to the Trustee.

WHEREFORE, Plaintiff respectfully requests that Anna Juravin be ordered to surrender possession or the value of the Anna Juravin Subsequent Transfer, in the amount of at least $160,000.00, to the Plaintiff, and for any such further relief that this Court deems just and proper.


[CONTINUES ON NEXT PAGE]

## COUNT XII: ACTUAL FRAUD
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against Anna Juravin as Subsequent Transferee)

238.   The Trustee realleges paragraphs 1 through 141 as if fully set forth herein.

239.   This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108 against UMGI as subsequent transferee.

240.   Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

241.   Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

242.   UMGI then transferred the Anna Juravin Subsequent Transfer in the amount of at least $160,000.00 to Anna Juravin.

243.   The Anna Juravin Subsequent Transfer was made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

244.   At the time of the Anna Juravin Subsequent Transfer, Debtor was insolvent.

245.   Debtor was insolvent at the time of the Anna Juravin Subsequent Transfer in that his liabilities exceeded his assets.

246.   The Anna Juravin Subsequent Transfer is avoidable and should be avoided, pursuant to and under 11 U.S.C. §§ 548 and 550.

247.   Under 11 U.S.C. § 550(a), the Trustee may recover the Anna Juravin Subsequent Transfer for the benefit of the estate, to the extent that the transfer is avoided under 11 U.S.C. §§ 548 and 550.

248.    Anna Juravin is the immediate or mediate (subsequent) transferee of the initial transferees for whose benefit the transfers were made, and as a result, the Trustee is entitled to recover the Anna Juravin Subsequent Transfer pursuant to §548(a)(1)(A) and 11 U.S.C. §550(a)(2).

249.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the estate is authorized to the extent that the initial fraudulent transfers that occurred within four (4) years of the Petition Date are avoided under 11 U.S.C. §548(a)(1)(A).

WHEREFORE, the Trustee demands a judgment against Anna Juravin as follows: (i) finding that Anna Juravin Subsequent Transfer, in the amount of at least $160,000.00 was fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding Anna Juravin Subsequent Transfer and entering a judgment in favor of the Trustee for the value of the transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the transfers and costs of the suit; and (iii) for any such further relief that this Court deems just and proper.

### COUNT XIII: CONSTRUCTIVE FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against Anna Juravin as Subsequent Transferee)

250.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

251.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

252.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

253.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

254.    UMGI then transferred the Anna Juravin Subsequent Transfer in the amount of at least $160,000.00 to Anna Juravin.

255.    Debtor did not receive reasonably equivalent value in exchange for the transfers of the Anna Juravin Subsequent Transfer.

256.    At the time of the Anna Juravin Subsequent Transfer, Debtor intended to incur, or reasonably should have believed he would incur, debts beyond his ability to pay them as they became due.

257.    At the time of the Anna Juravin Subsequent Transfer, Debtor was insolvent or became insolvent as a result of the fraudulent transfers, as reflected by the debt owed to the Internal Revenue Service and Federal Trade Commission, among others.

258.    At the time of the Anna Juravin Subsequent Transfer, Debtor's liabilities exceeded his assets.

259.    The transfers are avoidable under §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

260.    There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

261.    Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the transfers for the benefit of the estate, insofar as the transfers are avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against Anna Juravin as follows: (i) that the Anna Juravin Subsequent Transfer, in the amount of at least $160,000.00 was fraudulent and

avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the Anna Juravin Subsequent Transfer and entering a judgment in favor of the Trustee for the value of the transfers, plus pre-judgment interest from the date of the transfers and costs of the suit; and (iii) for any other and further relief that this Court deems just and proper.

## COUNT XIV: AVOID AND RECOVER POST PETITION TRANSFERS
### (Against PSR Developers)

262.    Plaintiff realleges paragraphs 1 through 141 as if fully set forth herein.

263.    This is an adversary proceeding to avoid and recover post-petition transfers pursuant to 11 U.S.C. §§ 549 and 550.

264.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

265.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

266.    UMGI then transferred the Anna Juravin Subsequent Transfer in the amount of at least $160,000.00 to Anna Juravin.

267.    Anna Juravin then used the Anna Juravin Subsequent Transfer to pay down the mortgage debt on the Debtor's residence at 15118 Pendio Drive, Monteverde, Florida 34756 (the **"PSR Transfer"**).

268.    On August 29, 2019, Anna Juravin wired $150,000.00 to PSR Developers.

269.    The PSR Transfer was not authorized by the Bankruptcy Code or by this Court.

270.    The PSR Transfer involved property of the estate.

271.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the Estate is permitted to the extent that the respective post-petition transfers are avoided under 11 U.S.C. § 549.

WHEREFORE, the Trustee demands judgment against PSR Developers as follows: (i) that the post-petition PSR Transfer, in the amount of $150,000.00 to or for the benefit of Debtor was unauthorized and avoidable under 11 U.S.C. §§ 549 and 550; (ii) avoiding the post-petition PSR Transfer to Debtor and entering a judgment in favor of the Trustee for the value of the PSR Transfer, plus pre-judgment interest from the date of the post-petition transfers and costs of the suit; and (iii) for any other and further relief that this Court deems just and proper.

## COUNT XV: TURNOVER OF PROPERTY UNDER 11 U.S.C. § 542(a)
### (Against PSR Developers)

272.   Plaintiff realleges paragraph 1 through 141 as if fully set forth herein.

273.   This is an adversary proceeding to compel turnover of property pursuant to 11 U.S.C. § 542(a).

274.   Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

275.   Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

276.   UMGI then transferred the Anna Juravin Subsequent Transfer in the amount of at least $160,000.00 to Anna Juravin.

277.   Anna Juravin then used the Anna Juravin Subsequent Transfer to pay down the mortgage debt on the Debtor's residence at 15118 Pendio Drive, Monteverde, Florida 34756 (the "**PSR Transfer**").

278.   On August 29, 2019, Anna Juravin wired $150,000.00 to PSR Developers.

279.   The PSR Transfer is property of the Debtor's Bankruptcy Estate.

280.   The PSR Transfer is subject to administration by the Trustee, including the payment of creditors.

281.    PSR Developers has an obligation to preserve the status quo as of the Petition Date and to turn over the PSR Transfer to the Trustee.

WHEREFORE, Plaintiff respectfully requests that PSR Developers be ordered to surrender possession of the PSR Transfer, in the amount of at least $150,000.00, to the Plaintiff, and for any such further relief that this Court deems just and proper.

## COUNT XVI: ACTUAL FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (Against PSR Developers as Subsequent Transferee)

282.    The Trustee realleges paragraphs 1 through 141 as if fully set forth herein.

283.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a), 726.108, 222.30 against UMGI as subsequent transferee.

284.    Debtor transferred the Deposits in the amount of at least $3,324,217.50 to NVLC and/or Karan Arora pre-petition.

285.    Out of those Deposits, NVLC and/or Karan Arora, at the direction of the Debtor, then transferred the UMGI Transfers, totaling at least $950,000.00, to UMGI.

286.    UMGI then transferred the Anna Juravin Subsequent Transfer in the amount of at least $160,000.00 to Anna Juravin.

287.    Anna Juravin then used the Anna Juravin Subsequent Transfer to pay down the mortgage debt on the Debtor's residence at 15118 Pendio Drive, Monteverde, Florida 34756 (the **"PSR Transfer"**).

288.    On August 29, 2019, Anna Juravin wired $150,000.00 to PSR Developers.

289.    The PSR Transfer was made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

290.    At the time of the PSR Transfer, Debtor was insolvent.

291.    Debtor was insolvent at the time of the PSR Transfer in that his liabilities exceeded his assets.

292.    The PSR Transfer is avoidable and should be avoided, pursuant to and under 11 U.S.C. §§ 548 and 550, and the FUFTA.

293.    Under 11 U.S.C. § 550(a), the Trustee may recover the PSR Transfer for the benefit of the estate, to the extent that the transfers are avoided under 11 U.S.C. §§ 548 and 550.

294.    PSR Developers is the immediate or mediate (subsequent) transferee of the initial transferee for whose benefit the transfers were made, and as a result, the Trustee is entitled to recover these PSR Transfer pursuant to §548(a)(1)(A) and 11 U.S.C. §550(a)(2).

295.    Therefore, in accordance with 11 U.S.C. §550(a), the recovery of property for the benefit of the estate is authorized to the extent that the respective transfer that occurred within four (4) years of the Petition Date are avoided under 11 U.S.C. §548(a)(1)(A).

WHEREFORE, the Trustee demands a judgment against PSR Developers as follows: (i) finding that the PSR Transfer, in the amount of at least $150,000.00, was fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the PSR Transfer entering a judgment in favor of the Trustee for the value of the transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the transfers and costs of the suit; and (iii) for any such further relief that this Court deems just and proper.

Dated October 4, 2021.

/s/Lauren M. Reynolds
Bradley M. Saxton, Esquire
Florida Bar No. 0855995
bsaxton@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No. 112141
Lreynolds@whww.com

**Winderweedle, Haines, Ward
& Woodman, P.A.**
Post Office Box 880
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
Attorneys for Dennis D. Kennedy,
Trustee

-and-

/s/ *James D. Ryan*

James D. Ryan, Esq.
Florida Bar No. 0976751
JDR@RYANLAWGROUP.NET
LAUREN@RYANLAWGROUP.NET
**Ryan Law Group, PLLC**
636 U.S. Highway One, Suite 110
North Palm Beach, FL 33408
Main: (561) 881-4447  Fax: (561) 881-4461
Special Counsel to Dennis D. Kennedy,
Trustee

# APPENDIX 1
## List of Defined Terms Appearing within the Complaint

1. **$501k Promissory Note** – The purported promissory note, in which the Debtor and MCO promise to pay Karan Arora the principal balance of $500,001.00, which is attached to Proof of Claim Number 15 was filed on January 3, 2020, on behalf of Karan Arora.

2. **Anna Juravin Subsequent Transfer** – The transfer, in the amount of at least $160,000.00, from UMGI to Anna Juravin personally on July 18, 2019, from a portion of the UMGI Tranfsers.

3. **Arora Preferential Transfers** – The transfers, totaling at least $1,050,000.00, from the Debtor to NVLC and/or Karan Arora during the one (1) year period prior to the Juravin Petition Date.

4. **Bogus Proofs of Claims** – Collectively, Proof of Claim Number 7, Proof of Claim Number 15, and Proof of Claim 15-2 filed by or on behalf of Karan Arora or NVLC.

5. **Deposits** – The monies referred to as "payments and deposits" in the amount of $3,324,217.50 transferred by the Debtor to NVLC pre-petition.

6. **FTC** – The Federal Trade Commission.

7. **FTC Case** – *Federal Trade Commission v. Juravin, et al.,* case number 8:15-cv-02231, filed in the United States District Court for the Middle District of Florida, against Roca Labs, Inc.; Roca Labs Nutraceutical USA, Inc.; Don Juravin; Juravin, Incorporated, Must Cure Obesity, Zero Calorie Labs, Inc., and George C. Whiting, seeking a permanent injunction and final judgment based upon claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act.

8. **FUFTA** - The Florida Uniform Fraudulent Transfer Act, Florida Statutes, Chapter 726.

9. **Juravin Bankruptcy Case** – *In re Don Karl Juravin*, case number 6:18-bk-06821, pending in this Court.

10. **JINC** - Juravin, Incorporated.

11. **Juravin Entities** – collectively, Roca Labs, Inc., Roca Labs Nutraceutical USA, Inc., Must Cure Obesity, Co., Juravin, Incorporated, and Zero Calorie Labs, Inc.

12. **Juravin Petition Date** – October 31, 2018.

13. **MCO** - Must Cure Obesity, Co.

i

14. **MCO Bankruptcy Case** – *In re Must Cure Obesity, Co.*, case number 6:20-bk-01801, pending in this Court.

15. **NVLC** - Natural Vitamins Laboratory Corp.

16. **NVLC Spreadsheet** – Spreadsheet produced by Karan Arora detailing the transactions between NVLC and Debtor, a copy of which is attached as Exhibit C.

17. **Post-Petition NVLC Transfers** – The post-petition transfers, totaling at least $220,000.00, from the Debtor, either personally or through the Juravin Entities, to NVLC and/or Karan Arora.

18. **Preference Period** - On or within one (1) year before the Petition Date, that is, between October 31, 2017 and October 31, 2018.

19. **Preferential Transfers** - The transfers, totaling at least $1,050,000.00, from Debtor to or for the benefit of NVLC and/or Karan Arora during the Preference Period.

20. **Proof of Claim 15-2** - Proof of Claim Number 15-2, filed on July 21, 2020 by or on behalf of Karan Arora and/or NVLC, to amend Proof of Claim Number 15.

21. **Property** – 15118 Pendio Drive, Montverde, Florida 34756, which was developed by PSR Developers, and at which the Debtor and his wife, Anna Juravin, reside.

22. **PSR Developers** - PSR Developers, LLLP.

23. **PSR Transfer** - Anna Juravin then used the Subsequent Transfer to pay down the mortgage debt on the Debtor's residence at 15118 Pendio Drive, Monteverde, Florida 34756.

24. **Return Payments** – The transfers, totaling at least $1,572,250.00, from NVLC and/or Karan Arora to the Debtor, made from September 12, 2018 through October 1, 2020.

25. **Roca Labs** - Roca Labs, Inc.

26. **RLN** - Roca Labs Nutraceutical USA, Inc.

27. **Trustee** - Dennis D. Kennedy, as Chapter 7 Trustee for the Estate of Don Karl Juravin.

28. **UMGI** - United Medical Group International, Inc.

29. **UMGI Transfers** – The transfers, totaling at least $950,000.00, from NVLC and/or Karan Arora to UMGI. Specifically, the transfers consisted of the following: (i)

ii

$350,050.00 on or about July 8, 2019; (ii) $250,000.00 on or about October 31, 2019; (iii) $100,000.00 on or about June 4, 2020; and (iv) $250,000.00 on or about September 25, 2020.

30.  **ZCL** - Zero Calorie Labs, Inc.

# APPENDIX 2
### Flowchart of Transfers



# EXHIBIT A

## Payments and Deposits from Don Jurwin

| Type | Num | Date | Name | Account | Amount |
|---|---|---|---|---|---|
| Payment | 8066 | 12/12/2013 | Must Cure Obesity | 1020 - Undeposited Funds | (12,000.00) |
| Payment | 1002 | 2/14/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (90,000.00) |
| Payment | 1008 | 3/14/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (30,000.00) |
| Payment | 1013 | 3/28/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (50,071.00) |
| Payment | WT | 7/2/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (1,000.00) |
| Payment | WT | 7/10/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (19,000.00) |
| Payment | WT | 9/3/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (10,000.00) |
| Payment | wt | 11/14/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (25,000.00) |
| Payment | wt | 12/24/2014 | Must Cure Obesity | 1020 - Undeposited Funds | (35,000.00) |
| Payment | wt | 1/26/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (7,930.48) |
| Payment | wt | 1/26/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (17,300.81) |
| Payment | wt | 4/10/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (28,000.00) |
| Payment | WT | 5/14/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (18,000.00) |
| Payment | WT | 7/9/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (18,000.00) |
| Payment | wt | 9/24/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (26,000.00) |
| Payment | wt | 11/2/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (24,000.00) |
| Payment | wt | 11/13/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (20,000.00) |
| Payment | wt | 11/13/2015 | Must Cure Obesity | 1020 - Undeposited Funds | (20,000.00) |
| Payment | wt | 3/10/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (20,000.00) |
| Payment | wt | 3/10/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (15,000.00) |
| Payment | wt | 3/16/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (42,185.00) |
| Payment | wt | 4/7/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (8,000.00) |
| Payment | 1034 | 9/13/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | wt | 11/2/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (18,000.00) |
| Payment | 1035 | 12/9/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (35,000.00) |
| Payment | | 12/9/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (23,500.00) |
| Payment | | 12/26/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (43,800.00) |
| Payment | | 12/29/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | | 12/29/2016 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | xxxx | 12/31/2016 | Must Cure Obesity | 2501 - Deposit of Client | (50,000.00) |
| Payment | 6000877660 | 4/3/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (53,000.00) |
| Payment | 4092565249 | 6/5/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (50,000.00) |
| Payment | 4023950269 | 8/16/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | WT 009100917 | 8/31/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (115,000.00) |
| Payment | 1040 | 9/8/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (90,000.00) |
| Payment | | 9/12/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | 1041 | 9/7/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (30,000.00) |
| Payment | 4030740525276 | 9/14/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | | 10/12/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | 6073649778X7 EST 333 | 10/26/2017 | Must Cure Obesity | 2501 - Deposit of Client | (120,000.00) |
| Payment | | 11/27/2017 | Must Cure Obesity | 2501 - Deposit of Client | (70,000.00) |
| Payment | | 12/06/2017 | Must Cure Obesity | 2501 - Deposit of Client | (50,000.00) |
| Payment | | 9/12/2017 | Must Cure Obesity | 2501 - Deposit of Client | (20,000.00) |
| Payment | | 8/31/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (100,000.00) |
| Payment | | 12/26/2017 | Must Cure Obesity | 2501 - Deposit of Client | (150,000.00) |
| Payment | | 12/29/2017 | Must Cure Obesity | 1020 - Undeposited Funds | (90,000.00) |
| Payment | 6079778970 | 3/5/2018 | Must Cure Obesity | 1020 - Undeposited Funds | (100,000.00) |
| Payment | 4062634988 | 5/10/2018 | Must Cure Obesity | 1020 - Undeposited Funds | (100,000.00) |
| Payment | 4073097162 | 5/30/2018 | Must Cure Obesity | 1020 - Undeposited Funds | (100,000.00) |
| Payment | 4076592156 | 6/27/2018 | Must Cure Obesity | 1020 - Undeposited Funds | (80,000.00) |
| Payment | | 11/6/2018 | Must Cure Obesity | 2501 - Deposit of Client | (142,200.00) |
| Payment | | 11/7/18 | Must Cure Obesity | 2501 - Deposit of Client | (80,000.00) |
| TOTAL | | | | | (2,764,217.50) |

## Return money to Don Jurwin

| Type | Num | Date | Name | Account | Amount |
|---|---|---|---|---|---|
| Check | DM BANK | 09/12/19 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (150,000.00) |
| Check | DM BANK | 09/12/19 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (50,000.00) |
| Check | DM BANK | 09/14/18 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (150,000.00) |
| Check | DM BANK | 09/14/18 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (50,000.00) |
| Check | DM BANK | 12/12/18 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (72,000.00) |
| Check | DM BANK | 01/09/19 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (150,000.00) |
| Check | DM BANK | 07/03/19 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (350,000.00) |
| Check | DM BANK | 10/31/19 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (200,000.00) |
| Check | DM BANK | 06/24/20 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (100,000.00) |
| Check | DM BANK | 10/31/20 | Must Cure Obesity | 1001 - BB&T Checking Acct -9341 | (250,000.00) |
| | | | | | (1,572,250.00) |

**Summary**

| | |
|---|---|
| Total Deposits | (2,764,217.50) |
| Total Return | (1,572,250.00) |
| Balance | (1,191,967.50) |
| Total Invoice | 1,685,644.76 |
| **Balance** | **493,677.26** |

## Billed to Don Jurwin

| Type | Num | Date | Account | Amount |
|---|---|---|---|---|
| Invoice | 8789 | 12/12/13 | 1300 - Accounts Receivable | 11,200.00 |
| Invoice | 8966 | 3/28/14 | 1300 - Accounts Receivable | 196,071.00 |
| Invoice | 9055 | 6/5/14 | 1300 - Accounts Receivable | 33,723.85 |
| Invoice | 9212 | 9/9/14 | 1300 - Accounts Receivable | 31,659.41 |
| Invoice | 9276 | 10/15/14 | 1300 - Accounts Receivable | 25,449.17 |
| Invoice | 9318 | 11/11/14 | 1300 - Accounts Receivable | 17,390.82 |
| Invoice | 9384 | 12/17/14 | 1300 - Accounts Receivable | 26,522.76 |
| Invoice | 9407 | 1/8/15 | 1300 - Accounts Receivable | 7,920.68 |
| Invoice | 9415 | 2/6/15 | 1300 - Accounts Receivable | 2,705.00 |
| Invoice | 9457 | 2/4/15 | 1300 - Accounts Receivable | 5,041.57 |
| Invoice | 9541 | 3/9/15 | 1300 - Accounts Receivable | 60,129.23 |
| Invoice | 9825 | 7/31/15 | 1300 - Accounts Receivable | 213,274.02 |
| Invoice | 10024 | 10/30/15 | 1300 - Accounts Receivable | - |
| Invoice | 10218 | 2/24/16 | 1300 - Accounts Receivable | 24,239.55 |
| Invoice | 10500 | 3/15/16 | 1300 - Accounts Receivable | 45,533.00 |
| Invoice | 10509 | 4/13/16 | 1300 - Accounts Receivable | 22,575.00 |
| Invoice | 10698 | 8/1/16 | 1300 - Accounts Receivable | 39,720.00 |
| Invoice | 10693 | 9/28/16 | 1300 - Accounts Receivable | 30,335.08 |
| Invoice | 10956 | 10/24/16 | 1300 - Accounts Receivable | 55,215.96 |
| Invoice | 10657 | 12/5/16 | 1300 - Accounts Receivable | 656,687.79 |
| Invoice | 11138 | 10/10/17 | 1300 - Accounts Receivable | 41,903.75 |
| Invoice | 11445 | 10/31/17 | 1300 - Accounts Receivable | 78,513.00 |
| Invoice | 11521 | 11/17/17 | 1300 - Accounts Receivable | 8,536.25 |
| Invoice | 11695 | 1/2/18 | 1300 - Accounts Receivable | 1,841.06 |
| Invoice | 11776 | 1/30/18 | 1300 - Accounts Receivable | 25,285.25 |
| Invoice | 11946 | 3/2/18 | 1300 - Accounts Receivable | 8,377.40 |
| Invoice | 12363 | 5/24/18 | 1300 - Accounts Receivable | 20,496.56 |
| Invoice | 12370 | 5/25/18 | 1300 - Accounts Receivable | 1.00 |
| Invoice | 12416 | 6/5/18 | 1300 - Accounts Receivable | 18,682.70 |
| Invoice | 12577 | 6/25/18 | 1300 - Accounts Receivable | 14,452.60 |
| Invoice | 12694 | 7/6/18 | 1300 - Accounts Receivable | 16,635.60 |
| Invoice | 12877 | 7/31/18 | 1300 - Accounts Receivable | 39,795.30 |
| | | | | 1,685,644.76 |